UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, ) ) ) | |
| Plaintiff, ) | Case No.: 2:11-cv-1069-GMN-GWF |
| vs. ) ) | **ORDER** |
| CIS COMMODITIES LLC, ALLEN NICHOLAS WARD, TRANS GLOBAL INVESTMENTS, LLC, and CHARLES LEROY TIMBERLAKE, ) ) ) ) | |
| Defendants. ) | |

Pending before the Court is Plaintiff U.S. Commodity Futures Trading Commission's Motion for Summary Judgment, (ECF No. 52), Motion for Default Judgment against Defendant CIS Commodities LLC, (ECF No. 55), and Motion for Permanent Injunction, (ECF No. 59). Additionally, the Court addresses Defendant Allen Nicholas Ward's Motion to Deny Plaintiff's Motion for Summary Judgment. (ECF No. 79).  For the reasons discussed below, Plaintiff's Motions are granted in part and denied in part and Defendant's Motion is denied.

**I.      BACKGROUND**

The United States Commodity Futures Trading Commission ("Plaintiff") brings this civil enforcement action alleging Defendants CIS Commodities LLC ("CIS"), Allen Nicholas Ward ("Ward"), Trans Global Investments, LLC ("Trans Global") and Charles Leroy Timberlake ("Timberlake") solicited and misappropriated funds from investors in violation of the anti-fraud provisions of the Commodity Exchange Act (the "Act").  On June 29, 2011, the Commission filed a Complaint for injunctive and other equitable relief and penalties under the Act, charging Defendants with violations of the anti-fraud provisions of the Act and related regulations. (ECF No. 1.)  On January 11, 2012, the Court entered a Clerk's Default against CIS. (ECF No. 40.)

Plaintiff moved for summary judgment against Ward, Timberlake, and Trans Global and for default judgment against CIS due to CIS's failure to file an answer to the Complaint.  Plaintiff also requested a permanent injunction prohibiting all Defendants from future violations of the Act and from all trading activity. (ECF No. 59.)  Ward filed a three-paragraph Response in Opposition ("Response") (ECF No. 66) to the Motion for Summary Judgment, and more than six months later, an untimely Motion to Deny Plaintiff's Motion for Summary Judgment ("Motion to Deny") (ECF No. 79).

Subsequent to the filing of Plaintiff's Motions, Defendants Trans Global and Timberlake were dismissed as defendants pursuant to a mutual Stipulation/Consent, (ECF No. 76), which the Court granted in its Order dated January 14, 2013, (ECF No. 77).  Accordingly, the Court only analyzes the pending Motions with respect to Defendants CIS and Ward.

## II.    FINDINGS OF FACT

From November 2006 to February 2009 (the "Relevant Period"), Ward, the founder and sole operator of CIS, solicited investments from the general public to trade commodity futures contracts with CIS. (ECF No. 54-1, Ex. D, Req. for Admis. No. 2.)  Conrad Gac ("Gac"), Janina Clark ("Clark"), and members of the Trans Global Commodity Pool (the "Trans Global Pool") agreed to invest. (ECF No. 5-5, Ex. B; 5-6, Ex. E, F.)  At the time of these solicitations, Ward:

- Represented to Gac that the invested funds would be managed by Ben Rubin, an experienced trader on the Chicago Mercantile Exchange.  Ward further represented that he had previously invested with Rubin and Rubin had doubled Ward's investment within two weeks. (ECF No. 5-5, Ex. B.)
- Represented to Clark that the invested funds would be placed in a commodity futures trading account. (ECF No. 5-6, Ex. E.)
- Represented to Clark and Gac that the invested funds would be used to trade commodity futures. (ECF No. 5-5, Ex. B; 5-6, Ex. E.)

However, contrary to these representations, CIS and Ward had not invested with Ben Rubin previously, and there was no agreement between the two for the investment of Gac's funds. (ECF No. 5-5, Ex. C.) Furthermore, the investors' funds were not deposited into a commodity futures trading account or used to trade commodity futures in any way. (ECF No. 5-1, Ex. A.) Rather, the funds were used to pay for CIS's operating costs and Ward's personal and legal expenses. (Id.; ECF No. 54-1, Ex. H.) Often, investors' funds were deposited into Ward's personal bank account. (ECF No. 54-1, Ex. E, Req. for Admis. of Fact # 5, # 9.) Ward testified in his deposition that the purpose of the investor funds was to pay for the day-to-day operations of CIS. (ECF No. 5-5, Ex. D.) However, this was not the purpose posited to the investors. (ECF No. 5-5, Ex. B; 5-6 Ex. E). Alternatively, some or all of the funds were used to purchase precious metals.[1] (ECF No. 54-1, Ex. A, Resp. to Interrog. # 11.) There is, however, no documentation relating to the purchase of precious metals. (ECF No. 54-1, Ex. E, Req. for Admis. No. 1.)

Additionally, Ward communicated false and misleading reports and statements claiming profits during the Relevant Period to perpetuate the fraud. Ward represented to Gac that his investment was earning a return and paid Gac $5,148 in purported interest. (ECF No. 5-5, Ex. B.) Later, Ward informed Gac that his investment earned $9,500 in interest, and induced Gac to make additional investments. (Id.) However, Gac's funds had not been invested, and had been largely depleted through Gac's spending. (ECF No. 5-1, Ex. A; 5-5, Ex. B.) Further, Ward represented to Clark on November 3, 2008 that her account balance as of October 31, 2008 was $219, 467 and that "150k is working in the commodity account, 50K is in cash, and the rest is in equities." (ECF No. 5-6, Ex. E.) Then, on January 21, 2009, Ward represented to Clark, in a second statement sent via email, that "[a]s of 12/31/08 you have between the two accounts $236,328" including "redemption's [sic] of the notes which account for $156,000. (Id.)

---

[1] There is conflicting testimony from Ward in the record about the disposition of the funds.

However, at no point did Clark receive any payments or return on her investment. (ECF No. 5-5, Ex. D; 5-6, Ex. E.) Clark's funds too had been depleted through Ward's spending. (ECF No. 5-1, Ex. A)

### III. DISCUSSION

The Act, 7 U.S.C. § 13a-1, authorizes the CFTC to seek injunctive relief and civil penalties against any person whenever it appears to the CFTC that the person "has engaged, is engaging, or is about to engage in any act or practice constituting a violation" of a provision of the Act or any rule, regulation, or order under the Act. Plaintiff's Complaint details violations of the anti-fraud provisions of the Act. The Court will first discuss the violations alleged against Ward, then discuss the request for default judgment against CIS, and finally discuss the propriety of the permanent injunction.

#### A. Summary Judgment on Claims against Ward

##### 1. Legal Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.1994). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing

versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288–89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Bank of America v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c).

### 2. Analysis

Plaintiff seeks summary judgment on four counts in its Complaint for violations of the anti-fraud and related provisions of the Act. Specifically, Plaintiff alleges that Ward is liable for Misrepresentation, Misstatement, and Misappropriation under § 4b, 7 U.S.C. § 6b(a)(2) for acts before June 18, 2008, and 7 U.S.C. § 6b(a)(2)(A)-(C) for acts on or after June 18, 2008,[2] and

---

[2] 7 U.S.C. § 6b(a)(2) was amended on June 18, 2008. Although the relevant substance of the statute did not change, the numbering of the subsections did.

liable for Commodity Pool Operator fraud under § 4o, 7 U.S.C. § 6o(1).

### i. Misrepresentation and Misstatement

Plaintiff alleges that Ward made misrepresentations while soliciting investments and misstatements to existing investors regarding the status and value of their investments in violation of § 4b of the Act. To establish a violation of § 4b , a plaintiff must show that, (1) a misrepresentation occurred, (2) the misrepresentation was material, and (3) Defendant acted with scienter. *CFTC v. R.J. Fitzgerald & Co.*, 310 F.3d 1321, 1328 (11th Cir. 2002). A misrepresentation is material if it is likely that a reasonable investor would consider the statement or omission important in making an investment decision. *TSC Indus., Inc. v. Northway Inc.*, 426 U.S. 438, 449 (1976). Misrepresentations of profit and risk are material. *See R.J. Fitzgerald*, 310 F.3d at 1332-33. Proof of scienter requires that "acts be done with knowledge of their nature and character." *Wasnick v. Refco, Inc.*, 911 F.2d 345, 348 (9th Cir. 1990) (quoting *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 283 (9th Cir. 1979)). This requirement is more than "[m]ere negligence, mistake or inadvertence," but "requires an intentional act or careless disregard for the statutory requirement." *Id*. (internal quotations omitted).

Additionally, Plaintiff must show that the fraud was made "in connection with an order to make, or the making of," a futures contract "for or on behalf of any other person." 7 U.S.C. 6b(a)(2). This requirement encompasses not only fraud within the contracts themselves, but misrepresentations made in solicitation of funds and reporting the value of an investment. *See Commodity Futures Trading Comm'n v. Vartuli*, 228 F.3d 94, 101 (2nd Cir. 2000).

Plaintiff has presented ample evidence showing that Ward made misrepresentations and misstatements to Gac and Clark, that those misrepresentations were material, that the misrepresentations were made with scienter, and that the misrepresentations were made "in connection with" a futures contract order. However, there remain questions of material fact regarding Ward's alleged statements made to the Trans Global Pool.

As pertaining to misrepresentations in soliciting investments from Gac and Clark, Plaintiff has shown that Ward represented to Gac and Clark that the funds would be put in a commodity futures trading account and used to invest in commodity futures contracts.  Ward also made additional statements to Gac that Ben Rubin would be trading the invested funds, and that Ward had prior dealings with Rubin.  Plaintiff has further produced evidence that the invested funds were neither put into commodity trading accounts nor used to invest in commodity futures contracts at all.  Further, Ward had not invested with Rubin previously, and there was no agreement in place for Rubin to invest Ward's investors' funds.  Thus, Plaintiff has established misrepresentations.  These misrepresentations are material as a reasonable investor would consider important the disposition and intended use of invested funds as well as the level of expertise of the person purported to conduct the trading.  Further, the misrepresentations were made with scienter as Ward's deposition testimony that the invested funds were never intended for deposit in a commodities trading account but for general funding of the company shows that he knew or should have known his statements were false.  Moreover, Ward would have known his statements regarding Ben Rubin were false because Rubin had never traded funds for Ward or CIS, had never doubled Ward's funds within two weeks, and had not agreed to trade Gac's funds as Ward represented.  Finally, Ward specifically solicited funds for commodity futures trading, satisfying the "in connection with" element.  Thus, Ward is liable for the misrepresentations made to Gac and Clark while soliciting their investments.

Additionally, Plaintiff has shown that after Gac and Clark had invested with Ward, Ward further made misstatements about the status and value of their investment.  Ward represented to both Gac and Clark that their investments had earned a return, and provided specific valuations.  Ward would have known that the amounts he quoted to Gac and Clark were incorrect as Ward had never invested the funds, but rather used them to cover personal and business expenses.  Accurate valuations of investments to track gains and losses would certainly be important to a

reasonable investor.  Finally, Ward's representations of the valuation of invested funds satisfy the "in connection with" requirement.  Thus, Ward is liable for the misstated valuations he provided to Gac and Clark.

However, as pertaining to the alleged misrepresentations and misstatements made to the Trans Global Pool, it is unclear from the record what degree of interaction Ward had with the Trans Global Pool.  Plaintiff's evidence establishes that the solicitations for investment and the account balance statements all originated from Timberlake.  Although Plaintiff has established a contractual relationship between Timberlake and Ward, the degree to which Ward was involved with the Trans Global Pool and whether that involvement is sufficient to impose liability on Ward for Timberlake's misrepresentations is a question of material fact not resolved in Plaintiff's evidence.  Thus, Plaintiff has established a violation for misrepresentation under the Act for Ward's statements to Gac and Clark, but it has not met its burden regarding the claim for misrepresentation or misstatement as to statements made to the Trans Global Pool.

Because Plaintiff has met its burden with respect to some of its claims, the Court now must analyze whether Ward has raised a question of material fact in response that would preclude summary judgment.  In his Response and untimely Motion to Deny, Ward claims that an unsigned affidavit, purportedly from Clark, as well as her deposition testimony "disputes the allegations brought by [Plaintiff]."  Ward further asserts that Plaintiff "has not shown there are clear and undeniable facts regarding their case."  However, Ward does not explain how either the deposition testimony or the purported affidavit disputes Plaintiff's allegations.  The Court has reviewed these documents, but found nothing in them that contradicts Plaintiff's evidence that Ward made false, material statements with scienter to Clark or Gac.  Further, the purported affidavit is inadmissible as it is neither signed nor sworn under penalty of perjury.[3]

---

[3] Although Clark, in her deposition testimony, did attest to the fact that the affidavit she provided Ward was accurate, there is not sufficient foundation to conclude that the unauthenticated document Ward submitted to the Court is, in fact, the document to which Clark referred.

Additionally, the Court disagrees with Ward's assertion that Plaintiff has failed to meet its burden for summary judgment. Plaintiff has produced substantial evidence that establishes Ward violated the Act and shows that Plaintiff is entitled to judgment as a matter of law. Contrarily, Ward has produced no evidence that would tend to negate (1) he made the alleged statements, (2) the statements were false, or (3) the statements were made with knowledge or reckless disregard of their falsity. Thus, Ward has failed to raise a question of material fact and the Court grants summary judgment on the § 4b violations for misrepresentation and misstatement as to statements made to Gac and Clark.

### ii. Misappropriation

Plaintiff additionally seeks summary judgment against Ward on its count for misappropriation under § 4b. "Soliciting or obtaining funds from investors for trading, then failing to trade the funds while using them for personal and business expenses is misappropriation." *Commodity Futures Trading Comm'n v. Emerald Worldwide Holdings, Inc.*, No. CV03-8229AHM, 2005 WL 1130588, at *7 (C.D. Cal. Apr. 19, 2005). Misappropriation or diversion of funds entrusted to one for trading purposes is "willful and blatant fraudulent activity" that clearly violates the Act. *Commodity Futures Trading Comm'n v. Weinberg*, 287 F.Supp.2d 1100, 1106 (C.D. Cal. 2003).

Although Plaintiff failed to demonstrate that Ward made misrepresentations and misstatements to the Trans Global Pool, Plaintiff has shown that Ward received funds from them. Plaintiff has also demonstrated that Ward used *all* investors' funds for personal and business expenses. Although Ward has asserted that the funds were direct investments in his company to be used at his discretion, the evidence overwhelmingly shows that the funds were entrusted to Ward to be invested in commodity futures contracts. Furthermore, even if the funds were direct investments in the company, disposal of the funds on personal expenses would still be misappropriation. Ward's actions are in clear violation of the Act. Consequently, Plaintiff has

established a violation for misappropriation of Gac, Clark, and the Trans Global Pool's funds.

     *iii.*  *Commodity Pool Operator Fraud*

  Section 4o(1) of the Act, 7 U.S.C. § 6o(1), prohibits commodity pool operators ("CPO") and their associated persons "to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant." A CPO is defined in the Act as any person "engaged in a business that is of the nature of a commodity pool . . . and who, in connection therewith, solicits . . . from others, funds . . . for the purpose of trading in commodity interests." 7 U.S.C. § 1a. The same conduct that violates Section 4b also violates Section 4o(1), with the exception that § 4o(1) does not have a scienter element. *Weinberg*, 287 F. Supp. 2d at 1108.

  Here, Ward solicited funds from Gac, Clark, and the Trans Global Pool for the purpose of trading in commodity futures contracts. Under the Act, Ward is considered a CPO. Thus, because the Court has already concluded that Ward violated § 4b, the Court also concludes that Ward's actions pertaining to Gac and Clark violate § 4o(1).

  In sum, Plaintiff's Motion for Summary Judgment is granted as to the claims for misappropriation and CPO fraud, and granted in part and denied in part as to the claims for misrepresentation and misstatement. Consequently, the Court denies Ward's Motion to Deny.

  **B.**  **Default Judgment against CIS**

    **1.**  **Legal Standard**

  Obtaining a default judgment is a two-step process governed by Federal Rule of Civil Procedure. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after the clerk enters default, a party must seek entry of default judgment under Rule 55(b).

  Upon entry of default, a court takes the factual allegations in the non-defaulting party's

complaint as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citation omitted). Nonetheless, although entry of default by the clerk is a prerequisite to an entry of default judgment, "a plaintiff who obtains an entry of default is not entitled to default judgment as a matter of right." *Warner Bros. Entm't Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1071 (C.D. Cal. 2004) (citation omitted). Instead, whether a court will grant a default judgment is in the court's discretion. *Id*.

The Ninth Circuit has identified the following factors as relevant to the exercise of the court's discretion in determining whether to grant default judgment: "(1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claims, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; [sic] (5) the possibility of a dispute concerning material facts; [sic] (6) whether the default was due to the excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel*, 782 F.2d at 1471-72.

### 2. **Analysis**

Plaintiff seeks a default judgment against CIS for misrepresentation, misstatement, and misappropriation under § 4b of the Act, 7 U.S.C. § 6b(a)(2) for acts before June 18, 2008, and 7 U.S.C. § 6b(a)(2)(A)-(C) for acts on or after June 18, 2008, for illegal acceptance of customer funds by a registered introducing broker under Regulation 1.57(c), 17 C.F.R. § 1.57(c), and for derivative liability for Ward's violations under § 2(a)(1)(B) of the Act and Regulation 1.2, 7 U.S.C. § 2(a)(1)(B); 17 C.F.R. § 1.2.

#### i. *Procedural Requirements*

Plaintiff has satisfied the procedural requirements for default judgment pursuant to Fed. R. Civ. P. 55(b). The Clerk properly entered a default against CIS pursuant to Fed. R. Civ. P. 55(a), (ECF No. 40), CIS is not an infant, incompetent person, or exempt under the Soldiers' and Sailors' Civil Relief Act of 1940, and insofar as CIS has not answered or otherwise responded to

the Complaint, the notice requirement of Rule 55(b)(2) is not implicated. Thus, there is no procedural impediment to entering a default judgment.

### ii. *Eitel* Factors

#### a. Possibility of Prejudice

The first *Eitel* factor considers whether the plaintiff will suffer prejudice if default judgment is not entered. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (S.D. Cal. 2002). Here, CIS has not answered, made an appearance, or otherwise responded to the Complaint. Due to CIS's refusal to appear in this action, there is the possibility of prejudice to Plaintiff in the absence of default judgment. Although Plaintiff may seek to collect civil penalties from Ward, if Plaintiff's Motion for Default Judgment is not granted, Plaintiff will likely be without other recourse to enjoin the company from continuing the violations. Thus, this *Eitel* factor weighs in favor of entering default judgment.

#### b. Substantive Merits and Sufficiency of the Complaint

The second and third *Eitel* factors favor a default judgment where the complaint sufficiently states a claim for relief under the "liberal pleading standards embodied in Rule 8" of the Federal Rules of Civil Procedure. *Danning v. Lavine*, 572 F.2d 1386, 1389 (9th Cir. 1978); see also Fed. R. Civ. P. 8. Plaintiff has properly pled that Ward, the sole operator of CIS, made material misstatements to investors with knowledge or reckless disregard of their falsity. Plaintiff's Complaint also sufficiently pleads that Ward spent investors' funds on personal and business expenses. Section 2(a)(1)(B) of the Act and Regulation 1.2, 7 U.S.C. § 2(a)(1)(B); 17 C.F.R. § 1.2, provide that "[t]he act . . . of any official . . . acting for any . . . corporation . . . within the scope of his employment or office shall be deemed the act . . . of such . . . corporation." Thus, the Complaint properly pleads that CIS is liable for Ward's violations of § 4b.

Additionally, the Complaint details that during the Relevant Period, CIS was registered with the Commission as an Introducing Broker. Regulation 1.57(c), 17 C.F.R. § 1.57(c) (2011),

provides in relevant part, and with certain limited exceptions not met within this case, that "[a]n introducing broker may not accept any money, securities or property (or extend credit in lieu thereof) to margin, guarantee or secure any trades or contracts of customers or option customers, or any money, securities or property accruing as a result of such trades or contracts." Plaintiff's Complaint sufficiently alleges that between May 2007 and October 2008, CIS, through Ward, accepted $180,648 from investors for the purpose of commodity trading and deposited those funds in Ward's bank accounts. This misappropriation of funds intended to be placed in a commodity futures account constitutes an acceptance of funds as a result of commodity futures contracts in violation the regulation. Thus, the Complaint properly pleads violations of Regulation 1.57(c).

### c. Sum of Money at Stake

Under the fourth *Eitel* factor, the Court considers "the amount of money at stake in relation to the seriousness of [a defendant's] conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. "This requires that the court assess whether the recovery sought is proportional to the harm caused by defendant's conduct." *Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010). Here, Plaintiff's Complaint alleges that CIS, through Ward, defrauded investors out of hundreds of thousands of dollars. Although Plaintiff seeks only a determination as to CIS's liability and monetary damages have not yet been proved, the nature of CIS's actions sufficiently support the imposition of the civil penalties and restitution which Plaintiff may seek under the Act. Further, as the Court will yet have an opportunity to review the proportionality of the recovery sought, and as CIS will yet have an opportunity to respond to alleged damages, this factor does not weigh against a default judgment.

### d. Possible Dispute

The fifth *Eitel* factor considers the possibility of dispute as to any material fact in the case. *PepsiCo*, 238 F. Supp. 2d at 1177. "Upon entry of default, all well-pleaded facts in the complaint

are taken as true, except those relating to damages." *Id*. The Court finds that based on the facts in the Complaint, there are no genuine questions of material fact that would preclude granting Plaintiff's Motion. The fifth *Eitel* factor weighs in favor of entry of default judgment.

### e.  Excusable Neglect

The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect. *PepsiCo*, 238 F. Supp. 2d at 1177. The evidence shows CIS was served with the summons and complaint on June 30, 2011. (ECF No. 13.)  Defendants additionally served Ward individually, thus providing further notice of the suit. (ECF. No. 12.)  The Clerk's default was not entered until November 11, 2011 (ECF No. 40.)  In this time, CIS never retained an attorney, appeared before the Court, or filed an answer to the Complaint. The Court finds that CIS had notice of the suit, but failed to appear and defend. Thus, there is no excusable neglect that would preclude default judgment.

### f.  Decision on the Merits

The seventh *Eitel* factor states that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the "mere existence of [Rule 55(b)] demonstrates that this 'preference, standing alone, is not dispositive.'" *PepsiCo*, 238 F. Supp. 2d at 1177 (citation omitted). Moreover, this case is somewhat unique in that default judgment establishes CIS's liability for the actions of Ward, which the Court has analyzed on the merits. Thus, the policy for a decision on the merits is lessened, and the Court is not precluded from entering default judgment against CIS.

In sum, the *Eitel* factors weigh in favor of default judgment on CIS's liability. Consequently, the Court grants Plaintiff's Motion for Default Judgment.

### C.  **Permanent Injunction**

The Court's determinations in this Order are as to Ward's and CIS's liability only. The civil penalties and other monetary relief appropriate under the Act have not been proved or

1  briefed and Plaintiff has requested to reserve its right to propose a specific monetary judgment
2  later, based on the Court's findings in this Order.  Thus, Ward and CIS's monetary liability will
3  not be determined at this time.

4  Plaintiff does, however, request equitable remedies to be imposed at this time.
5  Specifically, Plaintiff requests that the Court permanently enjoin Ward and CIS from further
6  violations of the Act and impose on them a permanent trading ban.  Under § 6c of the Act, 7
7  U.S.C. § 13a-1, the Court has the authority to enjoin future violations of the Act as well as the
8  discretion to order violators to "take such action as is necessary to remove the danger of violation
9  of [the Act] or any such rule, regulation, or order." 7 U.S.C. 13a-1(a), (c).

10  In assessing the propriety of an injunction, "[o]nce a violation of the Act has been shown,
11  the moving party need only show the existence of some reasonable likelihood of futures
12  violations" in order to obtain injunctive relief. *Commodity Futures Trading Comm'n v. Co Petro*
13  *Mktg. Grp., Inc.*, 502 F. Supp. 806, 818 (C.D. Cal. 1980), *aff'd*, 680 F.2d 573 (9th Cir. 1982).
14  The Court may consider past conduct in determining the likelihood of future violations. *Id*.
15  (citing *Commodity Futures Trading Comm'n v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979)).  In
16  drawing inferences from past conduct, the Court should look at the totality of the circumstances
17  and "[w]hen the violation has been predicated upon systematic wrongdoing, rather than an
18  isolated occurrence, a court should be more willing to enjoin future conduct." *Id*.

19  "Where an enforcement agency seeks an injunction by statute it need not prove irreparable
20  injury or the inadequacy of other remedies as required in private injunctive suits." *Donovan v.*
21  *Schmoutey*, 592 F. Supp. 1361, 1405 (D. Nev. 1984) (internal quotations omitted).  Factors the
22  Court may consider in determining whether permanent injunctive relief is appropriate include
23  (1) the egregiousness of the defendant's actions, (2) the isolated or recurrent nature of the
24  infraction, (3) the defendant's recognition of the wrongful nature of his conduct, and (4) the
25  likelihood that the defendant's occupation will present opportunities for future violations. *SEC v.*

*Ginsburg*, 362 F.3d 1292, 1304 (11th Cir. 2004).

There is ample evidence to support an injunction on further violations of the Act. Ward and CIS defrauded Clark, Gac, and the Trans Global Pool out of several thousands of dollars, and provided false statements about the status and value of their investment to perpetuate the fraud. Further, this was not an isolated incident, as the fraud was conducted on multiple individuals. Additionally, Ward, who maintains that he did nothing wrong, is a commodity trader by profession, and thus, his occupation will present opportunities for future violations. As all the factors weigh in favor of an injunction, the Court enjoins Ward and CIS from future violations of the Act.

However, the Court is more reluctant to grant the broad injunction of "permanently prohibiting [Ward and CIS] from trading for themselves and others" and from "engaging in commodity trading activities." As Ward is a commodity trader by profession, enjoining him from pursuing his trained occupation implicates a substantial private right.

Moreover, it is unclear what specific activity Plaintiff seeks to enjoin. In its requests for this injunction, Plaintiff has expressed its desire to provide the Court with a proposed Order, setting forth "specific relief regarding a trading ban and similar prohibitions regarding future commodity trading activities." Thus, the request is admittedly lacking in detail, and not narrowly tailored to balance the public and private interests of this particular case. The Court will not grant a permanent injunction and then allow the prevailing party to fill in the particulars. All specifics should be included in the motion so that the propriety of the injunction may be fully addressed by the Court. Consequently, the Court denies Plaintiff's request for a trading ban without prejudice. Plaintiff may submit its detailed proposal for a trading ban at the time it briefs Ward and CIS's monetary liability. In this manner, Ward and CIS will have an opportunity to respond to the injunction separately now that liability has been determined.

/ / /

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff U.S. Commodity Futures Trading Commission's Motion for Summary Judgment, (ECF No. 52), is **GRANTED in part and DENIED in part**. Ward's liability for misrepresentation and misstatement for statements made to the Trans Global Pool remains to be determined.

**IT IS FURTHER ORDERED** that Plaintiff U.S. Commodity Futures Trading Commission's Motion for Default Judgment, (ECF No. 55), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff U.S. Commodity Futures Trading Commission's Motion for Permanent Injunction, (ECF No. 59), is **GRANTED in part and DENIED in part**. Plaintiff's request for a trading ban is **DENIED without prejudice**.

**IT IS FURTHER ORDRERD** that Defendant Allen Nicholas Ward's Motion to Deny Plaintiff's Motion for Summary Judgment, (ECF No. 79), is **DENIED**.

**DATED** this 8th day of May, 2013.

_____
Gloria M. Navarro
United States District Judge