Elizabeth N. Pendleton
U.S. Commodity Futures Trading Commission
Illinois ARDC No. 6282050
525 West Monroe Street, Suite 1100
Chicago, Illinois 60661
Phone: (312) 596-0629
Facsimile: (312) 596-0714
Email: *ependleton@cftc.gov*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| **U. S. COMMODITY FUTURES TRADING COMMISSION,** | |
| **Plaintiff,** | **Case No. No: 11-cv-1069-GMN-GF** |
| **vs.** | **Hon. Gloria M. Navarro** |
| **CIS COMMODITIES LLC, ALLEN NICHOLAS WARD, TRANS GLOBAL INVESTMENTS, LLC and CHARLES LEROY TIMBERLAKE,** | **Mag. Judge George Foley, Jr.** |
| **Defendants.** | |

**ORDER OF PERMANENT INJUNCTION, RESTITUTION,
CIVIL MONETARY PENALTY AND OTHER EQUITABLE RELIEF AGAINST
DEFENDANTS CIS COMMODITIES LLC AND ALLEN NICHOLAS WARD
AS TO COUNTS I, II, V, AND VI OF THE COMPLAINT**

**I.      INTRODUCTION**

On June 29, 2011, plaintiff U.S. Commodity Futures Trading Commission ("CFTC" or "Commission") filed a Complaint for Injunctive and Other Equitable Relief and for Civil Monetary Penalties under the Commodity Exchange Act ("Complaint") against defendants CIS Commodities LLC ("CIS"), Allen Nicholas Ward ("Ward"), Trans Global Investments, LLC ("Trans Global") and Charles Leroy Timberlake ("Timberlake") (collectively "defendants")

seeking injunctive and other equitable relief for violations of the Commodity Exchange Act (the "Act"), 7 U.S.C. §§ 1 *et seq.,* (2012) and the Commission Regulations ("Regulations") promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2013).

On January 14, 2013, the Court entered a Consent Order for Permanent Injunction, Civil Monetary Penalty and Other Equitable Relief against Defendants Trans Global Investments, LLC and Charles Leroy Timberlake (the "Consent Order") (ECF No. 77), thereby resolving all claims against Trans Global and Timberlake.  On May 8, 2013, this Court entered an Order (ECF No. 81) granting in part the Commission's Motion for Summary Judgment as to defendant Ward and granting its Motion for Default Judgment against CIS for its failure to plead or otherwise defend this action.  On December 5, 2013, the Court entered an Order (ECF No. 92) clarifying its prior Order and instructing the CFTC to file a Motion for Entry of Judgment.  The Commission filed the Motion for Entry of Judgment on December 19, 2013.

Now, the Court hereby grants the Commission's Motion for Entry of Judgment judgment as a matter of law in favor of the Commission and against Ward on Counts I, II, and V of the Complaint.  The Court further enters the default judgment of CIS pursuant to Fed. R. Civ. P. 55(b) on Counts I, II and VI of the Complaint.  Therefore, the Court directs the entry of the following Findings of Fact, Conclusions of Law, and Order of Permanent Injunction and Other Equitable Relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), as set forth herein.

**THE COURT HEREBY FINDS:**

## II.   FINDINGS OF FACTS

### A.  Jurisdiction and Venue

1.      This Court has jurisdiction over the parties and subject matter of this action pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2012), which authorizes the CFTC to seek injunctive relief in a district court whenever it appears to the CFTC that a person or entity

has engaged, is engaging, or is about to engage in any act or practice that constitutes a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder.

      2.      Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012), because defendants CIS and Ward have transacted business in this District, and the acts and practices in violation of the Act have occurred or are occurring within this District.

**B. The Parties**

      3.      Plaintiff U.S. Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with the responsibility for administering and enforcing the provisions of the Act, 7 U.S.C. §§ 1 *et seq.* (2012), and the Regulations promulgated thereunder, 17 C.F.R. §§ 1 *et seq.* (2013).

      4.      From October 2006 through October 2009, when its LLC status was revoked, defaulted defendant CIS Commodities LLC was a Nevada limited liability company with its main office located in Henderson, Nevada.  CIS was registered with the Commission as an introducing broker ("IB") between January 3, 2007 and February 1, 2009, at which time CIS withdrew its IB registration.

      5.      Defendant Allen Nicholas Ward currently resides in Aspen, Colorado, and previously resided in Henderson, Nevada.  Ward was, at all relevant times, the sole officer and manager of CIS.  Ward was registered with the Commission as an associated person ("AP") of CIS from January 3, 2007 through January 2, 2009.  Ward also acted as an AP of former defendant Trans Global, an unregistered commodity pool operator ("CPO"), which operated the "Trans Global pool".

**C.  Ward's Solicitation of CIS Customers and Misappropriation of Customer Funds**

6.     In May 2007, Ward solicited Conrad Gac ("Gac") to invest $25,000 to trade commodity futures with CIS.  In a solicitation email titled "Ben's money," Ward represented that invested funds would be traded by Ben Rubin ("Rubin"), an experienced trader and non-party to this action, on the Chicago Mercantile Exchange (the "CME").  In that email and in contemporaneous verbal discussions, Ward represented that Rubin was already trading funds belonging to CIS and CIS customers, and that Gac would receive a 38% annual return on his investment and could liquidate at will.  Contrary to these representations, neither CIS nor Ward had invested with Rubin and there was no agreement with Rubin for the investment of Gac's funds.

7.     Based on the aforementioned representations, Gac gave Ward a $25,000 check payable to CIS.  Subsequently, Gac gave Ward an additional $20,648 check made payable to "Allen Ward," which Ward deposited in his personnel bank account.  These funds were to be used to trade commodity futures.  In fact, Ward did not deposit any of the funds he received from Gac into a commodity futures trading account, or otherwise invest or use those funds in commodity futures.  Rather, the funds were used to pay for CIS's operating costs and Ward's personal and legal expenses.  Ward, acting individually and on behalf of CIS, misappropriated a total of $40,500 from Gac alone.

8.     In October 2008, Ward solicited Janina Clark ("Clark"), who was at the time already a participant in the Trans Global pool, to invest $70,000 to trade commodity futures with CIS.  In a solicitation meeting, Ward represented that Clark's funds would be placed in a commodity futures trading account managed and controlled by CIS.  Ward further represented that Clark would receive a guaranteed return on her investment.

9.      On or around October 13, 2008, Clark gave Ward a check in the amount of $70,000 made payable to "Allen Ward," which Ward deposited into his personnel bank account. Clark invested the $70,000 due to Ward's representations that those funds would be used by CIS to trade commodity futures.  In fact, Clark's funds were not deposited into a commodity futures trading account or used to trade commodity futures in any way, but rather were used to pay for CIS's operating costs and Ward's personal and legal expenses.  Ward, acting individually and on behalf of CIS, misappropriated a total of $70,000 from Clark, exclusive of any contribution made by Clark to the Trans Global pool.

**D.  Ward's Misappropriation of Trans Global Pool Participant Funds**

10.      Ward also associated himself with the Trans Global pool and the pool's founder and president, Timberlake.  At least five individuals other than Timberlake or Ward participated in the Trans Global pool: Clark, Tim Larson, Randy Michaels, Art Nepute, and Tim Shank (collectively the "Trans Global pool participants").  Collectively, the Trans Global pool participants contributed a total of $220,000, exclusive of any contribution(s) by Ward or Timberlake.  Approximately $155,000 in Trans Global pool participant funds was used to trade various financial instruments including commodity futures through accounts introduced by CIS.

11.      Timberlake gave at least $65,000 of Trans Global pool participant funds to Ward to trade commodity futures.  Ward did not deposit the Trans Global pool funds into a commodity futures trading account, or otherwise invest or use those funds in commodity futures.  Rather, Ward misappropriated the Trans Global pool funds by using them for CIS's operating costs and legal expenses, and for personal uses such as automobile expenses, residential rent, meals and entertainment.

**E. Ward's Issuance of False Statements to CIS Customers and a Trans Global Pool Participant**

12.    Ward communicated false and misleading reports and statements to CIS customers and one Trans Global pool participant falsely claiming profits to perpetuate the fraud.

13.    Ward represented to Gac that his investment with CIS was earning a return and paid Gac $5,148 in purported interest.  On or around December 15, 2007, Ward falsely informed Gac in a written statement that his investment had earned $9,500 in interest ($4,352 of which remained unpaid), and induced Gac to make the additional $20,648 investment discussed in paragraph 7, above.

14.    Additionally, Ward willfully issued at least two false statements to Clark. Specifically, in an e-mail statement dated November 3, 2008, Ward falsely represented to Clark that her account balance as of October 31, 2008 was $219,467 and that "150k is working in the commodity account, 50K is in cash, and the rest is in equities."  This account summary included both Clark's $70,000 investment with CIS and $100,000 contribution to the Trans Global pool. On January 21, 2009, Ward represented to Clark, in a second statement sent via e-mail, that "[a]s of 12/31/08 you have between the two accounts $236,328" including "redemption's [sic] of the notes which account[s] for $156,000."  This account summary also included Clark's investment with CIS and contribution to the Trans Global pool. Ward used instruments of interstate commerce in issuing the false statements to Clark regarding the valuation of her account.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

6

## III.    CONCLUSIONS OF LAW

**A. Ward and CIS Violated Section 4b(a)(2)(i), (iii) of the Act with Respect to Acts Before June 18, 2008, and Section 4b(a)(1)(A), (C) of the Act, as Amended, with Respect to Acts on or After June 18, 2008, through Misrepresentations and Misappropriation of CIS Customer Funds (Count I)**

15.    Prior to being amended by the CRA, Section 4b(a)(2)(i), (iii) of the Act, 7 U.S.C. § 6b(a)(2)(i), (iii) (2006), made it unlawful for any person to: (i) cheat or defraud or attempt to cheat or defraud; or (iii) willfully to deceive or attempt to deceive by any means whatsoever other persons, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery made, or to be made, for or on behalf of such other persons if such contract for future delivery is or may be used for (A) hedging any transaction in interstate commerce in such commodity, or the products or byproducts thereof, or (B) determining the price basis of any transaction in interstate commerce in such commodity, or (C) delivering any such commodity sold, shipped or received in interstate commerce for the fulfillment thereof, in connection with acts occurring before June 18, 2008.  Similarly, Section 4b(a)(1)(A), (C) of the Act, 7 U.S.C. § 6b(a)(1)(A), (C), (Supp. II 2009) makes it unlawful for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person: (A) to cheat or defraud or attempt to cheat or defraud such other person; or (C) willfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for such other person, in connection with acts occurring on or after June 18, 2008.

16.     From at least November 2006 through at least February 2009, defendants Ward and CIS, by and through Ward, cheated, defrauded or deceived, and/or attempted to cheat, defraud or deceive CIS customers by, among other things:

(a) knowingly or recklessly making false representations of material fact to prospective customers and customers, including that:

(i) customer funds deposited with CIS would be used to trade commodities;

(ii) Rubin, an experienced third-party trader, would trade the funds; and

(b) misappropriating customer funds.

17.     By this conduct, Ward and CIS, by and through Ward, violated Section 4b(a)(2)(i), (iii) of the Act, 7 U.S.C. § 6b(a)(2)(i), (iii) (2006), with respect to acts before June 18, 2008, and Section 4b(a)(1)(A), (C) of the Act, 7 U.S.C. § 6b(a)(1)(A), (C) (Supp. II 2009), with respect to acts on or after June 18, 2008.

18.     Ward and CIS, by and through Ward, engaged in the acts and practices described above knowingly or with reckless disregard for the truth.

19.     The foregoing acts, omissions and failures of Ward were committed within the scope of his employment or association with CIS.  Therefore, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2011), CIS is liable for his acts, omissions and failures in violation of Section 4b(a)(2)(i), (iii) of the Act, 7 U.S.C. § 6b(a)(2)(i), (iii) (2006), with respect to acts before June 18, 2008, and Section 4b(a)(1)(A), (C) of the Act, 7 U.S.C. § 6b(a)(1)(A), (C) (Supp. II 2009), with respect to acts on or after June 18, 2008.

20.     During all relevant times, Ward directly or indirectly controlled CIS, and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting CIS's

violations.  Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2006), Ward is therefore liable for CIS's violations to the same extent as CIS.

**B. Ward and CIS Violated Section 4b(a)(2)(ii) of the Act with Respect to Acts Before June 18, 2008, and Section 4b(a)(1)(B) of the Act, as Amended, with Respect to Acts on or After June 18, 2008, by Issuing False Statements to CIS Customers (Count II)**

21.    Prior to being amended by the CRA, Section 4b(a)(2)(ii) of the Act, 7 U.S.C. § 6b(a)(2)(ii) (2006), made it unlawful for any person to willfully to make or cause to be made to other persons any false report or statement, or willfully to enter or cause to be entered for other persons any false record, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery made, or to be made, for or on behalf of such other persons if such contract for future delivery is or may be used for: (A) hedging any transaction in interstate commerce in such commodity, or the products or byproducts thereof, or (B) determining the price basis of any transaction in interstate commerce in such commodity, or (C) delivering any such commodity sold, shipped or received in interstate commerce for the fulfillment thereof, in connection with acts occurring before June 18, 2008.  Similarly, Section 4b(a)(1)(B) of the Act, 7 U.S.C. § 6b(a)(1)(B) (Supp. II 2009), makes it unlawful for any person, in or in connection with any contract of sale of any commodity for future delivery or other agreement, contract or transaction "willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record" in connection with acts occurring on or after June 18, 2008.

22.    In November 2008 and January 2009, defendants Ward and CIS, by and through Ward, willfully caused at least two false written statements to be made to Clark, a CIS customer, concerning the profitability and value of her investments.  Ward also issued at least one statement to Gac falsely reporting that his investment had earned interest.

23.     Ward and CIS, by and through Ward, engaged in the acts and practices described above knowingly or with reckless disregard for the truth.

24.     By this conduct, Ward and CIS, by and through Ward, violated Section 4b(a)(2)(ii) of the Act, 7 U.S.C. §6b(a)(2)(ii) (2006), with respect to acts before June 18, 2008, and Section 4b(a)(1)(B) of the Act, 7 U.S.C. § 6b(a)(1)(B) (Supp. II 2009), with respect to acts on or after June 18, 2008.

25.     Ward's acts, omissions and failures were committed within the scope of his employment or office with CIS.  Therefore, CIS is liable for his acts, omissions and failures pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006), and Regulation 1.2, 17 C.F.R. § 1.2 (2011).

26.     During all relevant times, Ward directly or indirectly controlled CIS, and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting CIS's violations.  Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2006), Ward is therefore liable for CIS's violations to the same extent as CIS.

**C.  Ward Committed CPO Fraud in Violation of Section 4o(1)(A), (B) of the Act (Count V)**

27.     Section 4o(1)(A), (B) of the Act, 7 U.S.C. § 6o(1)(A), (B) (2006), in relevant part, makes it unlawful for any commodity trading advisor, commodity pool operator, or associated person directly or indirectly to "employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant" or "to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant."

28.     Trans Global acted as a CPO by engaging in a business that is the nature of an investment trust, syndicate or similar form of enterprise and by soliciting, accepting and

receiving from others funds, securities and/or property for the purpose of trading commodities. Ward acted on behalf of and as an AP of Trans Global.  Among other things, Ward participated in the solicitation of funds for the pool, shared responsibility for the management of Trans Global's trading accounts, and sent at least two periodic statements to a Trans Global pool participant.

29.     Ward, while acting as an AP of a CPO and by use of the mails or means or instrumentality of interstate commerce, employed a device, scheme, or artifice to defraud at least one pool participant, or engaged in a transaction, practice, or course of business which operates as a fraud of deceit upon pool participants or prospective participants, by, among other things, causing false written periodic statements to be made to at least one pool participant concerning the profitability and value of her shares of the Trans Global pool in violation of Section 4o(1) (A), (B) of the Act, 7 U.S.C. § 6o(1) (A), (B) (2006).

30.     Ward engaged in the acts and practices described above knowingly or with reckless disregard for the truth.

**D.  CIS, a Registered IB, Accepted  Funds for Commodity Trading in Violation of Regulation 1.57(c) (Count VI)**

31.     Regulation 1.57(c), 17 C.F.R. § 1.57(c), provides in part, with certain limited exceptions not met within this case, that "[a]n introducing broker may not accept any money, securities or property (or extend credit in lieu thereof) to margin, guarantee or secure any trades or contracts of customers or option customers, or any money, securities or property accruing as a result of such trades or contracts."

32.     Between May 2007 and October 2008, CIS, a registered IB, though its agent Ward, directly accepted at least $180,648 from customers for the purpose of commodity trading.

33.     Ward accepted those funds within the scope of his employment or association with CIS.  Therefore, CIS is liable for his acts, omissions and failures pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2013).

## IV.     PERMANENT INJUNCTION

### IT IS HEREBY ORDERED THAT:

34.     Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), defendants Ward and CIS are permanently restrained, enjoined and prohibited from directly or indirectly engaging in conduct in violation of Section 4b(a)(1)(A)-(C) of the Act,7 U.S.C. § 6b(a)(1)(A)-(C) (2012).   Defendant Ward is also permanently restrained, enjoined and prohibited from directly or indirectly engaging in conduct in violation of Section 4o(1) (A), (B) of the Act, 7 U.S.C. § 6o(1) (A), (B) (2012).  Finally, defendant CIS is further permanently restrained, enjoined and prohibited from directly or indirectly engaging in conduct in violation of Regulation 1.57(c), 17 C.F.R. § 1.57(c) (2013).

35.     Defendants Ward and CIS are also permanently restrained, enjoined and prohibited from directly or indirectly:

a.  Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act, 7 U.S.C. § 1a (2012);

b.  Entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 1.3 (hh), 17 C.F.R. § 1.3(hh) (2013)) ("commodity options"), security futures products, swaps (as that term is defined in Section 1a(47) of the Act, (2012) and as further defined by Commission Regulation 1.3(xxx), 17 C.F.R. § 1.3(xxx)), and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i) (2012)) ("forex contracts") for their own personal accounts or for any accounts in which they have a direct or indirect interest;

c.  Having any commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts traded on their behalf;

d. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts;

e. Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options, security futures products, swaps, and/or forex contracts;

f. Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2013); and/or

g. Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2013)), agent or any other officer or employee of any person (as that term is defined in Section 1a of the Act, 7 U.S.C. § 1a (2012)) registered, exempted from registration or required to be registered with the Commission, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2013).

## V.   RESTITUTION AND CIVIL MONETARY PENALTY

### A.   Restitution

36.   Defendants Ward and CIS shall jointly and severally pay restitution in the amount of *[one-hundred-seventy-five-thousand dollars ($175,500)],* plus post-judgment interest, within thirty (30) days of the date of the entry of this Order (the "Restitution Obligation").  Post-judgment interest shall accrue on the Restitution Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

37.   To effect payment of the Restitution Obligation and the distribution of any restitution payments to CIS customers, defendants Ward and/or CIS shall make Restitution Obligation payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's, or bank money order, as follows:

a. in the amount of seventy thousand dollars ($70,000), plus post-judgment interest, to Janina P. Clark;

    b.   in the amount of forty thousand five hundred dollars ($40,500), plus post-judgment interest, to Conrad Gac; and

    c.   in the amount of sixty-five thousand dollars ($65,000), plus post-judgment interest, to participants in the Trans Global pool to be distributed pursuant to paragraph 30 of the Consent Order.

38.    Ward and/or CIS shall make Restitution Obligation payments under cover letter that identifies the paying defendant and the name and docket number of this proceeding. Defendants shall simultaneously transmit copies of the cover letter and the form of payment to: (a) the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581 and (b) the Regional Counsel, Commodity Futures Trading Commission, 525 West Monroe Street, Suite 1100, Chicago, IL 60661.

39.    Ward shall execute any documents necessary to release funds that he has in any repository, bank, investment or other financial institution, wherever located, in order to make partial or total payment toward the Restitution Obligation.

40.    The Monitor shall provide the Commission at the beginning of each calendar year with a report detailing the disbursement of funds to CIS customers during the previous year. The Monitor shall transmit this report under a cover letter that identifies the name and docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

41.    The amounts payable to each CIS customer shall not limit the ability of any participant from proving that a greater amount is owed from CIS or Ward, or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any participant that exist under state or common law.

42.     Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each customer who suffered a loss is explicitly made an intended third-party beneficiary of this Order of Permanent Injunction and may seek to enforce obedience of this Order to obtain satisfaction of any portion of the restitution that has not been paid by Ward or CIS to ensure continued compliance with any provision of this Order and to hold Ward and/or CIS in contempt for any violations of any provision of this Order.

43.     To the extent that any funds accrue to the U.S. Treasury for satisfaction of the Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

### B.     Civil Monetary Penalties

44.     Defendants Ward and CIS shall jointly and severally pay a civil monetary penalty in the amount of *[five-hundred-ninety-six-thousand-five-hundred-dollars ($596,500)],* plus post-judgment interest, within thirty (30) days of the date of the entry of this Order (the "CMP Obligation"). Post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961 (2006).

45.     Defendants shall pay their CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

Commodity Futures Trading Commission
Division of Enforcement
ATTN:  Accounts Receivables – AMZ 340
E-mail Box:  9-AMC-AMZ-AR-CFTC
DOT/FAA/MMAC
6500 S. MacArthur Blvd.
Oklahoma City, OK 73169
Telephone: (405) 954-5644

If payment by electronic funds transfer is chosen, Ward shall contact Nikki Gibson or her successor at the address above to receive payment instructions and shall fully comply with those instructions.  Defendant shall accompany payment of the CMP Obligation with a cover letter that identifies Ward and CIS and the name and docket number of this proceeding.  Defendant shall simultaneously transmit copies of the cover letter and the form of payment: (a) the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581 and (b) the Regional Counsel, Commodity Futures Trading Commission, 525 West Monroe Street, Suite 1100, Chicago, IL 60661

       **C.**     **Provisions Related to Monetary Sanctions**

     46.    Partial Satisfaction:  Any acceptance by the Commission or the Monitor of partial payment of the Restitution Obligation or CMP Obligation shall not be deemed a waiver of defendants' obligation to make further payments pursuant to this Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

       **VI.**     **MISCELLANEOUS PROVISIONS**

     47.    Notice: All notices required to be given by an provisions in this Order shall be sent certified mail, return receipt requested as follows:

Notice to Commission:

Regional Counsel, Division of Enforcement
U.S. Commodity Futures Trading Commission
525 West Monroe Street, Suite 1100
Chicago, Illinois 60661

16

Notice to defendants Ward and CIS:

Allen Nicholas Ward
64 Riverdown Dr.
Aspen, CO 81611
*cis.info@yahoo.com*

All such notices to the Commission shall reference the name and docket number of this action.

48.     Change of Address/Phone:  Until such time as Ward and/or CIS satisfies in full the Restitution Obligation and CMP Obligation as set forth in this Order, Ward shall provide written notice to the Commission by certified mail of any change to his telephone number and mailing address within ten (10) calendar days of the change.

49.     Invalidation:  If any provision of this Order or if the application of any provision or circumstance is held invalid, then the remainder of this Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

50.     Waiver:  The failure of any party to this Order or of any participant at any time to require performance of any provision of this Order shall in no manner affect the right of the party or participant at a later time to enforce the same or any other provision of this Order.  No waiver in one or more instances of the breach of any provision contained in this Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Order.

51.     Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Order shall be binding upon defendants Ward and CIS upon any person under their authority or control, and upon any person who receives actual notice of this Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with defendants.

52.     Ward understands that the terms of the Order are enforceable through contempt proceedings, and that, in any such proceedings he may not challenge the validity of this Order.

**IT IS SO ORDERED** this 16th day of April, 2014.

_____
Gloria M. Navarro, Chief Judge
United States District Court